## Chesterfield Manufacturing Company *versus* William Dehon *et al.*

A commission merchant sold the goods of several consignors, mixed indiscriminately in the same parcels, to the same persons, and in some instances took a negotiable note in his own name for the price, and in others charged the purchaser in account with the amount of his purchase. Afterwards, by an indenture of assignment, he transferred all his effects in trust for the benefit of his creditors who should execute the indenture, which contained a release of all debts due from him. A consignor who had signed the indenture, and whose demand was included among the debts therein enumerated, brought an action against the trustees for the proceeds of his goods, and upon distinguishing by evidence his proportion of the accounts and notes collected by them, he was allowed to recover the same, the assignment being considered as not passing property thus held by the assignor in trust.

A usage of commission merchants thus in sales to mix in one parcel the goods of various consignors, and to charge the same, or take notes therefor, as above mentioned, to negotiate the notes for their own benefit as their own property, and in case of the purchaser's failure, not to give notice thereof to the consignor, but to charge him with the debt as a bad debt, was held not to be inconsistent with such a recovery, so long as the consignor could trace his goods, or the proceeds thereof, in the hands of the commission merchant or his trustee.

Assumpsit for money had and received.

The plaintiffs consigned goods to James Vila & Co. for sale on commission, who from time to time made advances upon them ; and on the 15th of December, 1825, when they failed in business, they were in advance 147 dollars above the net amount of the sales. The goods were sold at different times to divers persons, mixed indiscriminately in the same parcels with the goods of a great many other consignors, without informing the purchasers that they belonged to more than one person, or that they were not the goods of Vila & Co., who did business in Boston as merchants on their own account, as well as on commission. In some instances the purchasers were charged in account with the amount of their purchase, and in others, notes payable to Vila & Co. or order, were taken in payment. The amount outstanding included in accounts thus charged, at the time of their failure, on account of goods sold for the plaintiffs, and which had since been paid to the defendants, as assignees of Vila & Co., was 275 dollars, and the amount included in the various promissory notes, taken as above mentioned, and which had

been paid to the defendants, was 216 dollars. Vila testified that, in sales, it was the usage of his firm, and of all commission merchants dealing in the same kind of business, to mix the goods of various consignors in one lot, and to charge the same, or take notes therefor, as before mentioned ; that the usage was, to negotiate notes so taken, for the benefit of the commission merchant, as his own property, whether he were in advance to the consignor or not, and that in case of failure of the purchaser, notice was not usually given to the consignors, but they were charged with the debt as a bad debt ; that the notes were not usually claimed by or given up to the consignors, the number interested in a single note rendering it in most instances impracticable ; that an account of the amount of goods sold for each consignor was kept, wherein he was charged with advances &c. and bad debts, and credited with the amount of sales ; that this usage was generally known to the various consignors who sent goods to this market for sale ; and the witness believed that the plaintiffs had notice of the usage, and tacitly assented thereto. Other witnesses testified to the continuance of this usage for fifteen years, and that it would be extremely inconvenient to transact the business of commission merchants, selling principally to country traders (as those dealing in American goods do), in any other way.

Vila & Co. on their failure, by indenture tripartite, dated December 15, 1825, assigned all their effects to the defendants, in trust to pay them and their other creditors the moneys due to them. The assignment contains a covenant not to sue, and a release of all demands, and was executed by the plaintiffs before the commencement of their suit. The amount of their demand was contained in a schedule attached to the indenture at the time of their signing and sealing it, and the sums claimed by them were included in the notes and accounts contained in the same schedule. This indenture was offered in evidence by the defendants, to show that the plaintiffs had treated Vila & Co. as their debtors for the sums they now claimed of the defendants, and had released the same.

Chesterfield
Man. Co.
v.
Dehon.

March 30th.

April 2d.

A verdict was taken for the plaintiffs, subject to the opinion of the whole Court.

The case was argued on the part of the defendants, by *Rand*, and on that of the plaintiffs, by *W. H. Gardiner*, who relied on *Thompson* v. *Perkins et al.* 3 Mason, 232 ; *Denston* v. *Perkins et al.* 2 Pick. 86, [see 2d ed. 87, n. 1,] and the cases there cited.

PARKER C. J. delivered the opinion of the Court. We can perceive no ground to distinguish this case from that of *Denston* v. *Perkins et al.* recently decided by this Court, except the release signed by the plaintiffs in consideration of the assignment, and the evidence in regard to the usage of commission merchants in the sale of goods consigned to them.

With respect to the release, we do not see that it can operate to bar or extinguish the plaintiffs' claim. All the property of Vila & Co. was transferred to trustees for the use of their creditors who should release them. The assignment would not in law transfer goods and merchandise intrusted to them, as factors, to sell ; for the consignors' property remains in the goods, and in the proceeds of them, saving the lien which the factor may have for advances and expenses.[1] The consignors may pursue the goods, or the price of them, notwithstanding such assignment. If it were not so, the property of the consignors, sold and unsold, would go to pay other creditors, who cannot be presumed to have trusted a factor on the faith of goods merely intrusted to him for sale. The release is of debts due from Vila & Co. This ought not to be construed to be a relinquishment of the plaintiffs' right to goods which Vila & Co. held in trust, or to the notes which they had taken from purchasers for the plaintiff.

It is said that according to the usage proved, the factor has such a control over the notes as would be inconsistent with the claim of property by the consignors ; but we see no such inconsistency. No doubt the factor may, by breach of trust, or even with the implied assent of consignors, trans-

---

[1] See as to this lien and the interest which the assignees would have in it, *Denston* v. *Perkins*, 2 Pick. (2d ed.) 87, n. 1; *Thompson* v. *Perkins*, 3 Mason, 241; 2 Kent's Comm. (3d ed.) 640.

let the notes, or have them discounted to raise money, and innocent indorsees will hold them against the consignors; but while they remain in his hands, or in the hands of his trustees, as in the case before us, the consignees may assert their right, either against the trustees, or the purchasers of the goods, if they have not made payment. It is said that the giving of a negotiable note by the purchasers is a payment,[1] and that this distinguishes the case from *Scott* v. *Surman*, Willes, 400; but suppose the debt to be paid by the note, the note does not thereby become the property of the factor.[2]

If the consignor cannot obtain the notes to sue the promisors, a difficulty might arise; but that would be between him and the vendee. The factor is still the trustee of the consignor, and a court of equity, with full powers, would reach the notes or the proceeds in his hands. But when he has received the money, or it has been paid to his trustee, the powers of a court of equity are not wanting to do justice.[3] No doubt it will sometimes be difficult to distinguish the proportions belonging to many consignors, when the price of different parcels of goods has been consolidated into one note, but to this objection it is answered, as it was in the case of *Denston* v. *Perkins et al.*, that here the plaintiffs' interest 's distinguished, and there is now no difficulty.

*Judgment for the plaintiffs.*

Chesterfield
Man. Co.
*v.*
Dehon.

---

[1] See *Whitcomb* v. *Williams,* 4 Pick. (2d ed.) 231, n. 1.

[2] See 2 Kent's Comm. (3d ed.) 623; *Beckwith* v. *Sibley,* 11 Pick. 484.

[3] See 1 Story's Comm. Eq. 442 to 449.